# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

**Brenda Kay Combs**                                                                         **Plaintiff**

v.                        **No. 4:15-CV0043 BRW-JTR**

**Carolyn W. Colvin, Acting Commissioner,**
**Social Security Administration**                                     **Defendant**

## Recommended Disposition

### Instructions

The following recommended disposition was prepared for U.S. District Judge Billy Roy Wilson. A party to this dispute may file written objections to this recommendation. An objection must be specific and state the factual and/or legal basis for the objection. An objection to a factual finding must identify the finding and the evidence supporting the objection. Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1] The objecting party must serve the opposing party with a copy of an objection. Failing to object within 14 days waives the right to appeal questions of fact.[2] If no objections are filed, Judge Wilson may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

**Reasoning for Recommended Disposition**

Brenda Kay Combs seeks judicial review of the denial of her application for disability insurance benefits (DIB).[3] In July 2011, Combs alleged she was disabled when she lost her factory job on April 30, 2004,[4] but in November 2013, she alleged disability beginning December 1, 2009.[5] The latter date is important because a claimant must be insured to receive DIB and insured status expired on December 31, 2009.[6] Combs based disability on carpal tunnel syndrome, back problems, arthritis, depression, and chronic fatigue.[7]

**The Commissioner's decision**. This case considers a narrow time period: from December 1, 2009 — the amended onset date — to December 31, 2009 — the day insured status expired. For this time period, the Commissioner's ALJ identified bilateral carpal tunnel syndrome as a severe impairment.[8] The ALJ determined Combs could have done light work, but excluded work requiring constant fingering and

---

[3]SSA record at p. 190 (applying on July 13, 2011 and alleging disability beginning Apr. 30, 2004).

[4]Combs lost her job when the factory closed. *Id*. at pp. 75-76 & 218.

[5]*Id*. at p. 65 (amending alleged onset date).

[6]*Id*. at pp. 197 & 214.

[7]*Id*. at p. 218.

[8]*Id*. at p. 13.

2

handling.[9] The ALJ consulted a vocational expert and found some of Combs's skills as a certified nurse aide (CNA) transfer to other work.[10] Because a vocational expert identified available work, the ALJ concluded Combs was not disabled and denied the application.[11]

After the Commissioner's Appeals Council denied review,[12] Combs filed this case to challenge the decision.[13] The recommended disposition explains why the court should affirm the decision.

**Combs's allegations**. Combs challenges the finding of transferable skills. She says the finding doesn't conform to agency guidance. She maintains identified available jobs exceed her ability to work because she cannot engage in constant or repetitive handling and fingering. For these reasons, she contends substantial evidence does not support the decision.[14]

**Applicable legal principles**. In reviewing a decision denying an application

---

[9] *Id*. at p. 14.

[10] *Id*. at p. 79.

[11] *Id*. at p. 18.

[12] *Id*. at p. 1.

[13] Docket entry # 1.

[14] Docket entry # 15.

for DIB, the court must determine whether substantial evidence supports the decision.[15] Substantial evidence exists if a reasonable mind will accept the evidence as adequate to support the decision.[16]

**Substantial evidence supports the ALJ's determination about the ability to work**. To obtain DIB, a claimant must prove she was disabled before insured status expires.[17] A claimant must prove disability with medical evidence; her allegations are not enough.[18]

---

[15]*Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009).

[16]*Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

[17]*See* 42 U.S.C. §§ 416(i), 423(c). "In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status." *Pyland v. Apfel*, 149 F.3d 873, 877 (8th Cir. 1998).

[18]42 U.S.C. § 423 (d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability…; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment…which could reasonably be expected to produce the pain or other symptoms alleged and which…would lead to a conclusion that the individual is under a disability"); 20 C.F.R. § 404.1508 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."); 20 C.F.R. § 404.1529 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.").

Remote medical evidence shows Combs underwent carpal tunnel releases in 2004.[19] Medical evidence shows significant improvement.[20] Combs's doctor characterized residual symptoms as mild[21] and predicted further improvement with time.[22] The doctor recommended a 5% impairment rating for the use of the hands for Combs's workers compensation claim.[23]

Combs hasn't received medical treatment for her hands since that time. February 2006 was the last time she received medical treatment, but that incident has no bearing on her claim.[24] Failing to seek medical treatment contradicts the claim of disabling symptoms. According to agency medical experts, the medical evidence establishes no severe impairment before insured status expired.[25]

In determining the ability to work, the ALJ accommodated residual symptoms by excluding work requiring constant handling and fingering. Combs maintains she can't do even repetitive handling and fingering, but there's no medical evidence

---

[19] SSA record at pp. 366-67.

[20] *Id*. at p. 361.

[21] *Id*. at p. 358.

[22] *Id* at p. 361.

[23] *Id*. at p. 358.

[24] *Id*. at pp. 282 & 314 (prescription for urinary tract infection).

[25] *Id*. at pp. 325 & 346.

supporting the claim. A reasonable mind will accept the evidence as adequate to support the decision because Combs sought no medical treatment before insured status expired and because the ALJ accounted for residual symptoms.

**The complaint about transferrable skills provides no basis for relief.** Before the factory job, Combs worked as a CNA.[26] When asked about past work, a vocational expert identified skills transferring from the CNA job to other jobs: activities of daily living protocol, charting, reporting, and data entry.[27] According to the vocational expert, these skills transfer to companion and first aid attendant. Combs maintains this evidence conflicts with agency guidance in SSR 82-41.

SSR 82-41 uses nurse aide as an example in explaining how to determine whether a claimant has transferrable skills. According to the guidance, a "nurse aide ordinarily performs … tasks which do not provide a special advantage over unskilled workers, such as dusting and cleaning rooms, changing bed linens, and bathing, dressing and undressing patients. The only duties which suggest transferable skills are those related to "nurse" rather than "aide" — taking and recording the rates of temperature, pulse and respiration; and recording food and liquid intake and output."[28]

---

[26]*Id.* at pp. 219, 225 & 227.

[27]*Id.* at p. 79.

[28]SSR 82-41: Title II & Titles: Work Skills & Their Transferability as Intended by the Expanded Vocational Factors Regulations ¶ 2d.

Combs suggests the identified transferrable skills conflict with the guidance because the vocational expert included activities of daily living protocol.

Notwithstanding the example, the guidance permits an ALJ to rely on a vocational expert during a hearing.[29] Considering the purpose of a vocational expert — "to assess whether jobs exist for a person with the claimant's precise disabilities"[30] — the ALJ properly relied on vocational evidence. Even setting aside duties related to "aide," duties related to "nurse" transfer to first aid attendant. A vocational expert, knowledgeable of industry trends, is in the best position to determine whether a claimant has transferrable skills.

To the extent Combs maintains the vocational expert identified unskilled jobs she couldn't do, the argument depends on her allegation that she couldn't do repetitive handling and fingering in December 2009. The ALJ properly discounted the allegation based on medical evidence showing improvement after carpal tunnel releases, the lack of medical treatment, and reported activities of daily living. Even if the vocational expert was mistaken about skills transferring to companion work, one mistake does not undermine the decision because the vocational expert identified

---

[29]*Id.* at ¶ 2c.

[30]*Gilliam v. Califano*, 620 F.2d 691, 694 n.1 (8th Cir. 1980).

available unskilled jobs.[31] "An ALJ may rely on a vocational expert's testimony as long as some of the identified jobs satisfy" the ALJ's requirements.[32] When the claimant has a nonexertional impairment like the inability to do constant handling and fingering, the ALJ must use vocational expert testimony to meet the Commissioner's burden "of showing the existence of jobs in the national economy that the claimant is capable of performing."[33]

### Conclusion and Recommended Disposition

Substantial evidence supports the ALJ's decision because a reasonable mind will accept the evidence as adequate to support the decision. No evidence suggests mild carpal tunnel syndrome prevented light work before insured status expired. A vocational expert identified available work. The ALJ made no reversible legal error. For these reasons, the undersigned magistrate judge recommends DENYING Combs's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

---

[31] *Grable v. Colvin*, 770 F.3d 1196, 1202 (8th Cir. 2014).

[32] *Grable*, 770 F.3d at 1202.

[33] *Stewart v. Shalala*, 957 F.2d 581, 586 (8th Cir. 1992).

Dated this 27th day of November, 2015.

_____
United States Magistrate Judge